[Cite as *Alt v. Pazmino-Stanfield* , 2018-Ohio-2346.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

DAMON D. ALT, SENECA COUNTY
TREASURER,

      PLAINTIFF-APPELLEE,                CASE NO.  13-17-34

      v.

RAFAELA MERCEDES
PAZMINO-STANFIELD, ET AL.,        O P I N I O N

      DEFENDANTS-APPELLANTS.

Appeal from Seneca County Common Pleas Court
Trial Court No. 17 CV 0004

Judgment Affirmed

Date of Decision:   June 18, 2018

APPEARANCES:

    *John T. Barga* for Appellants

    *Derek W. DeVine* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-Appellants, Rafeala Mercedes Pazmino-Stanfield and Kirk Stanfield (collectively referred to as "Appellants") appeal the judgment of the Seneca County Common Pleas Court granting summary judgment to Plaintiff-Appellee, Damond D. Alt, the Seneca County Treasurer ("Appellee"). On appeal, Appellants assert that the trial court erred: 1) by granting the Appellee's motion for summary judgment; 2) by overruling the Appellants' objection to Appellee's affidavit; and 3) by granting judgment in the sum of $11,407.92 in favor of Appellee and against the Appellants. For the following reasons, we affirm the ruling of the trial court.

*Factual and Procedural Background*

{¶2} Appellant Rafeala Mercedes Pazmino-Stanfield ("Rafeala") is the owner of real property located at 114 West Tiffin Street in Attica, Ohio. (Doc. No. 1). Rafeala resides at the residence with her husband, Appellant Kirk Stanfield ("Kirk"). (Doc. No. 37). This case involves the water/sewer assessments on Appellants' property by the Village of Attica.

{¶3} In November, 2009, Appellants requested that the Village of Attica (the "Village") turn off the water service at the curb of their property. (*Id.*). The Village complied with the Appellants' request. However, the Village's sewer services to the property were not terminated. As to sewer fees, as of November, 2009,

Appellants were being assessed $1.00 per month for their sewer service by the Village. (*Id.*). But, in January, 2010, the Village enacted Ordinance No. 2009-50, which created an assessment of a flat monthly sewer rate (to Appellants) in the amount of $64.14 per month. (*Id.*). As a result of this ordinance, Appellants refused and failed to pay the sewer assessment charges, even though they did pay their normal real estate taxes. (08/15/17 Tr., Damond D. Alt, at 10-11). However, in 2016, Appellants stopped paying their real estate taxes altogether. (*Id.*)

{**¶4**} As a result of Appellants' failure to pay their property taxes and assessments, the Seneca County Prosecutor's Office, Appellee's attorney, instituted a tax foreclosure proceeding (the "complaint") against Appellants in the Seneca County Common Pleas Court on January 3, 2017. (Doc. No. 1). In its complaint, Appellee asserted that the Seneca County Auditor had duly filed a master list of real property parcels located in Seneca County which were delinquent in the payment of real estate taxes and assessments. (*Id.*). Further, Appellee attached the relevant portion of the master list regarding Appellants' real estate delinquencies to the complaint, identified as Exhibit B. (*Id.*, Ex. B). The foreclosure complaint alleged that Rafeala owed the sum of $5,231.43 in delinquent taxes, assessments, penalties, and interest for 2015 and for prior years relative to her real estate. (*Id.*). As a result of Rafeala's unpaid real estate taxes and assessments, Appellee asserted that it had a valid first lien on Rafeala's property that was subject to foreclosure. (*Id.*).

**{¶5}** In its foreclosure complaint, Appellee requested judgment be rendered in its favor against Appellants for the amount of $5,231.43, plus interest, per annum, at the statutory rate from the date of filing the complaint, along with accrued taxes, assessments, penalties, and costs. (*Id.*). Appellee further requested that its lien against Rafeala's property be declared valid, be foreclosed, and that Appellants property be sold to satisfy the lien. (*Id.*).

**{¶6}** On February 16, 2017, Appellants filed their answer to the complaint, denying being delinquent in paying their taxes, asserting six affirmative defenses. (Doc. No. 12).

**{¶7}** On April 7, 2017, Appellee moved for summary judgment pursuant to Civ.R. 56. (Doc. No. 15). Appellee asserted that as of March 27, 2017, Appellants owed $5,945.58 in delinquent taxes, assessments, interest, and penalties to Appellee. (*Id.*). In support of its motion for summary judgment, Appellee attached (to the motion) the legal description of Appellants' real property; an affidavit[1] indicating that Appellants' delinquent taxes, assessments, charges, penalties, and interest due amounted to $5,945.58 as of March 27, 2017; and the affidavit of Julie A. Adkins ("Adkins"), the Auditor of Seneca County, Ohio, asserting that the fair

---

[1] In addition to Appellee's affidavit indicating that Appellants owed $5,945.58 in delinquent taxes, assessments, charges, penalties, and interest, Appellee also estimated that the amount of taxes, assessments, interest and penalties additionally payable on the property at the time the deed of the property is transferred to the purchaser would be $2,962.34, and estimated the costs incurred in the foreclosure proceedings to be $2,500.00, for a grand total of $11,407.92 due and payable on the property at the time the deed of the property is transferred to the purchaser. (Doc. No. 15, Ex. B).

market value of the property as of March 27, 2017 was $75,020.00. (*Id*., Ex. Nos. A, B, C). Appellee asserted that based upon the pleadings and the submitted affidavits, there were no genuine issues of fact remaining for determination by the trial court.

{¶8} Prior to responding to Appellee's motion for summary judgment, Appellants took the depositions of Appellee; Adkins; and Gregory A. Martin, the Administrator of the Village of Attica. (See, 8/15/2017 Tr., Damond D. Alt; 8/15/2017 Tr., Julie A. Adkins; and 8/15/2017 Tr., Gregory A. Martin). After taking these depositions, Appellants filed their response to Appellee's motion for summary judgment on September 1, 2017. (Doc. No. 37). In addition to asserting that summary judgment was inappropriate due to the existence of genuine issues of material fact surrounding the calculation of their delinquent taxes, Appellants also objected to the affidavit of Appellee, arguing that the affidavit was not based upon personal knowledge pursuant to Civ.R. 56(E). (*Id*.).

{¶9} On September 11, 2017, Appellee filed its reply to Appellant's opposition to summary judgment. (Doc. No. 38). A hearing on the motion for summary judgment was set for October 18, 2017 and on October 19, 2017, the trial court granted Appellee's motion for summary judgment. (Doc. Nos. 43; 49). In granting the motion for summary judgment, the trial court found that Appellee had "established a prima facie case through the tax certificate that there are delinquent

taxes, assessments, penalties, and interest associated with the Property." (*Id*. at 5).

From this judgment entry Appellants appeal, and present the following assignments

of error for review:

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED THE APPELLEE'S MOTION FOR SUMMARY JUDGMENT WITHOUT ACKNOWLEDGING THAT THE APPELLANTS HAD MET THEIR BURDEN BY ESTABLISHING GENUINE ISSUES OF MATERIAL FACT THAT REMAIN FOR RESOLUTION BY THE TRIER OF FACTS.**

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT OVERRULED THE APPELLANTS' OBJECTION TO THE ADMISSIBILITY AND CONSIDERATION OF THE APPELLEE'S AFFIDAVIT IN SUPPORT OF APPELLEE'S MOTION FOR SUMMARY JUDGMENT.**

## ASSIGNMENT OF ERROR NO. III

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED JUDGMENT IN THE SUM OF $11,407.92 IN FAVOR OF APPELLEE AND AGAINST THE APPELLANTS.**

*Appellants' First, Second, and Third Assignments of Error*

{¶10} Appellants first, second, and third assignments of error address the

trial court's determinations upon summary judgment. As all three assignments of

error are interrelated, we will address them together. In doing so, we find no error

in the granting of summary judgment to Appellee and affirm the decision of the trial court.

*Standard of Review*

{¶11} An appellate court reviews a trial court's decision on a motion for summary judgment *de novo*. *Hancock Fed. Credit Union v. Coppus,* 2015-Ohio-5312, 54 N.E.3d 806, ¶ 15 (3rd Dist.). Trial courts may grant a motion for summary judgment when "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Hamilton v. Hector,* 117 Ohio App.3d 816, 819, 691 N.E.2d 745, 747 (3rd Dist.1997). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-93, 1996-Ohio-107, 662 N.E.2d 264. Additionally, "'upon appeal from summary judgment, the reviewing court should look at the record in the light most favorable to the party opposing the motion.'" *Hector, supra* quoting *Campbell v. Hosp. Motor Inns, Inc.,* 24 Ohio St.3d 54, 58, 493 N.E.2d 239 (1986). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided

in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

*Analysis*

{¶12} Appellants initially question whether the Village and the Seneca County Auditor properly certified the sewer assessment delinquencies to the Seneca County Treasurer and whether the Village used the proper procedures regarding the certifications that created the lien. Specifically, Appellants argue that the Village Administrator failed to certify its tax delinquency under the proper Revised Code section. We disagree.

{¶13} Appellants' tax certificates, signed by the Village Administrator, indicated that Appellants owed various amounts pursuant to Ohio Revised Code sections 735.29(A) and 735.273[2] "for unpaid water/sewer charges." (Doc. No. 37, Ex. Nos. A-E). Our review of the cited statutory authority reveals that R.C. 735.29(A), entitled "General powers and duties; *collection of water rents or charges*," provides that:

> The board of trustees of public affairs appointed under section 735.28 of the Revised Code shall manage, conduct, and control the waterworks, electric light plants, artificial or natural gas plants, *or other similar public utilities*, furnish supplies of water, electricity, or gas, collect all water, electric, and gas rents or charges, and appoint necessary officers, employees, and agents.

---

[2] R.C. 735.273 simply addresses the power granted to the Village Administrator to manage, conduct, and control the water works or other similar public utilities.

The board may make such bylaws and rules as it determines to be necessary for the safe, economical, and efficient management and protection of such works, plants, and public utilities. These bylaws and rules, when not repugnant to municipal ordinances or to the constitution or laws of this state, shall have the same validity as ordinances.

For the purpose of paying the expenses of conducting and managing such waterworks, plants, and public utilities or of making necessary additions thereto and extensions and repairs thereon, the board may assess a water rent or charge, or a light, power, gas, or utility rent, of sufficient amount, and in such manner as it determines to be most equitable, upon all tenements and premises supplied therewith. When such rents, except water rents and charges, are not paid when due, the board may certify them to the county auditor to be placed on the duplicate and collected as other village taxes, or it may collect them by actions at law in the name of the village. When water rents or charges are not paid when due, the board may do either or both of the following:

(A) Certify them, together with any penalties, to the county auditor. The county auditor shall place the certified amount on the real property tax list and duplicate against the property served by the connection if he also receives from the board additional certification that the unpaid rents or charges have arisen pursuant to a service contract made directly with an owner who occupies the property served.

The amount placed on the tax list and duplicate shall be a lien on the property served from the date placed on the list and duplicate and shall be collected in the same manner as other taxes, except that, notwithstanding section 323.15 of the Revised Code, a county treasurer shall accept a payment in such amount when separately tendered as payment for the full amount of such unpaid water rents or charges and associated penalties. The lien shall be released immediately upon payment in full of the certified amount. Any amounts collected by the county treasurer under this division shall be placed for immediate distribution to the village, in the appropriate distinct fund established for water rents and charges.

(Emphasis added.)  R.C. 735.29(A).

**{¶14}** However, Appellants direct this Court's attention to R.C. 729.49, entitled "Sewerage rates or charges of rent," which provides:

> The legislative authority of a municipal corporation which has installed or is installing sewerage, a system of sewerage, sewage pumping works, or sewage treatment or disposal works for public use, may, by ordinance, establish just and equitable rates or charges of rents to be paid to the municipal corporation for the use of such services, by every person, firm, or corporation whose premises are served by a connection thereto. Such charges shall constitute a lien upon the property served by such connection and if not paid when due shall be collected in the same manner as other municipal corporation taxes. The legislative authority may change such rates or charges from time to time as is deemed advisable. The legislative authority of a municipal corporation operating under a charter may establish such schedule of rates and provide for its administration by designating the department or officer to be charged with the enforcement of sections 729.49 to 729.52, inclusive, of the Revised Code.

R.C. 729.49.

**{¶15}** Appellants argue that because they submitted affidavits to the trial court indicating that they had not had water service to their property since November, 2009, the property tax assessments could only represent unpaid sewer charges.  (*See generally,* Doc. No. 37).  Furthermore, Appellants direct us to the deposition testimony of Greg Martin, the Village Administrator for Attica, who was unable to state (for certain) whether the unpaid assessments on Appellants' tax statement were for unpaid sewer or for water charges.  (*See,* 8/15/2017 Tr., Gregory A. Martin, at 7-8).  Since the certifications under R.C. 735.29 were listed as the

statutory authority for bringing the foreclosure action by Appellee, and because Appellants' personal affidavits asserted that they just received sewer service to their residence, Appellants assert that a genuine issue of material fact exists and summary judgment is not proper. We disagree.

{¶16} We find that the certification language set forth in R.C. 735.29(A) is inconsequential to Appellants' argument. Initially, we note that the certifications in question contained the following language:

> A delinquent assessment exists on the account of [Appellants] for the parcel of real estate located at 114 W. Tiffin St. Attica OH 44807 * * * *unpaid water/sewer charges* in the amount of * * *.

(Emphasis added.) (Doc. No. 37, Ex. Nos. A-E). As to the certifications, Ordinance No. 2009-50, adopted on January 28, 2010, established a *water and sewer* rate schedule for the Village of Attica. (*Id.,* Ex. No. I). Because R.C. 735.29 specifically provides authority for the board of trustee of public affairs to "manage, conduct, and control the waterworks *or other similar public utilities*," we find this language, coupled with the tax certification and ordinance language utilized by the Village was sufficient to put Appellants on notice that they were subject to an assessment on their property taxes for water services, sewer services, or both.

{¶17} The Ohio Supreme Court, in *Britt v. City of Columbus,* determined that "a sewerage system owned and operated by a municipality for the benefit of its inhabitants is a public utility within the meaning of 'public utility' in Sections 4 and

6, Article XVIII [of the Ohio Constitution].[3]" *Britt v. City of Columbus,* 38 Ohio St.2d 1, 8, 309 N.E.2d 412 (1974) citing *Mead-Richer v. City of Toledo,* 114 Ohio App. 369, 374, 182 N.E.2d 846 (6th Dist.1961). Since the Village has clearly treated sewer services as an analogous public utility to water, and has addressed water and sewer jointly for such purpose, we find this portion of Appellants' argument without merit.

{¶18} Determining that the certifications in question were proper, we direct our attention to Appellee's complaint of foreclosure. The procedure to be followed with regard to foreclosure of delinquent land is found in R.C. 5721.13 and R.C. 5721.18. R.C. 5721.13 provides, in its pertinent part that:

> One year after certification of a delinquent land list, the county auditor shall make in duplicate a certificate, to be known as a delinquent land tax certificate, of each delinquent tract of land, * * * upon which the taxes, assessments, charges, interest, and penalties have not been paid, describing each tract of land or city or town lot in the same manner as it is described on the delinquent tax list and the amount of the taxes, assessments, charges, interest, and penalties due and unpaid, and stating that the amount has been certified to the county prosecuting attorney as delinquent. The certificate shall be signed by the auditor or his deputy, and the original certificate shall be filed with the prosecuting attorney.

R.C. 5721.13(A). *See also, Rinehart v. Goberdhan,* 8 Ohio App.3d 342, 343, 457 N.E.2d 354 (10th Dist.1983). Then, pursuant to R.C. 5721.18:

---

[3] We refer to the Ohio Constitution for the definition of "public utility" because the power to acquire, construct, own or lease and to operate a utility, the product of which is to be supplied to a municipality or its inhabitants, is derived from the Ohio Constitution. *See, Swank v. Village of Shiloh,* 166 Ohio St. 415, 417, 143 N.E.2d 586 (1957).

> The county prosecuting attorney, upon the delivery to the prosecuting attorney by the county auditor of a delinquent land or delinquent vacant land tax certificate, or of a master list of delinquent or delinquent vacant tracts, shall institute a foreclosure proceeding under this section in the name of the county treasurer to foreclose the lien of the state, in any court with jurisdiction or in the county board of revision with jurisdiction pursuant to section 323.66 of the Revised Code, unless the taxes, assessments, charges, penalties, and interest are paid prior to the time a complaint is filed, or unless a foreclosure or foreclosure and forfeiture action has been or will be instituted under section 323.25, sections 323.65 to 323.79, or section 5721.14 of the Revised Code.

R.C. 5721.18. Furthermore, "[t]he certificate or master list filed by the auditor with the prosecuting attorney is *prima-facie* evidence at the trial of the foreclosure action of the amount and validity of the taxes, assessments, charges, penalties, and interest appearing due and unpaid and of their nonpayment." R.C. 5721.18(A).

{¶19} Here, the record demonstrates that Appellee attached to its complaint a "preliminary judicial report" that revealed Appellants' land was listed on the "delinquent land list" for 2015.[4] (Doc. No. 2, Ex. Nos. A, B). Accordingly, the State of Ohio, on behalf of Appellee, established a *prima-facie* case through the tax certificate that there were delinquent taxes, assessments, charges, penalties, and interest associated with Appellants' property and that such delinquencies created a valid lien on Appellants' property.

---

[4] While Appellants question the validity of the "delinquent land list" because it is entitled "Prosecutor's delinquent land list – 2015," Julie Adkins, the Seneca County Auditor, testified that the prosecutor has nothing to do with the master tax list, and further testified that her office prepares the master tax list and then certifies it to the County Treasure for collection. (08/15/2017 Tr., Julie A. Adkins, at 9; 11 – 12).

**{¶20}** While Appellants dispute the amount of taxes owed on their property, it is uncontroverted that Appellants admit that they are delinquent in the payment of their taxes and assessments. (10/18/2017 Tr. at 21). Furthermore, Appellee, during his deposition testimony, produced an exhibit with all of Appellants' real property tax payments since the second half of 2011. (08/15/2017 Tr., Damon D. Alt, at 15; Ex. No. J). Appellee testified that Appellants (during the time period relating to the ligation) paid less on their taxes than the total balance due. (*Id.*). Finally, Appellee also testified that Appellants had not paid the full year of real estate taxes for 2016. (*Id.* at 11).

**{¶21}** Appellants, while raising hypothetical questions about the correct amount of tax owed, failed in their burden to establish a genuine issue of material fact to survive Appellee's summary judgment motion.

**{¶22}** Appellants attempt to challenge Appellee's affidavit as inadmissible because it lacked "personal knowledge" of the facts contained therein. However, Appellee testified (as the County Treasurer), that once he receives a certification from the Auditor's office that a tax is due to be collected, he proceeds statutorily to collect said taxes. (08/15/2017 Tr., Damon D. Alt, at 6). Since Appellee's affidavit was based upon his statutory duty as County Treasurer, we find Appellants' "personal knowledge" argument without merit. Accordingly, Appellants' first, second, and third assignments of error are overruled.

**{¶23}** Having found no error prejudicial to the Appellants herein in the particulars assigned and argued, we overrule Appellants' first, second, and third assignments of error and affirm the judgment of the trial court.

***Judgment Affirmed***

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**